PAUL L. REIN, Esq. (SBN 43053)
CELIA MCGUINNESS, Esq. (SBN
LAW OFFICES OF PAUL L. REIN
200 Lakeside Dr., Suite A
Oakland, CA 94612
(510) 832-5001

JULIE A. OSTIL, Esq. (SBN 215202)
LAW OFFICE OF JULIE A. OSTIL
2010 Crow Canyon Place, Suite 100
San Ramon, CA 94583
(925) 265-8257

Attorneys for Plaintiffs
NICOLE BROWN-BOOKER and JANA OVERBO

M. BRETT BURNS, Esq.
HUNTON & WILLIAMS, LLP
575 Market St., Suite 3700
San Francisco, CA 94105
(415) 975-3700

Attorney for Defendants
LOEWS CALIFORNIA THEATERS, INC. dba AMC
LOEWS METREON 16 IMAX; WESTFIELD
CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE BROWN-BOOKER and JANA OVERBO, <br><br> Plaintiffs, <br><br> v. <br><br> LOEWS CALIFORNIA THEATERS, INC. dba AMC LOEWS METREON 16 IMAX; WESTFIELD CORPORATION; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO. C07-5368 MHP/JCS <br> Civil Rights <br><br><br> CONSENT DECREE AND [PROPOSED] ORDER |

## CONSENT DECREE AND ORDER

1. Plaintiffs NICOLE BROWN-BOOKER and JANA OVERBO, filed a Complaint in this action on October 19, 2007 under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and California civil rights laws against Defendants, LOEWS CALIFORNIA THEATERS, INC. dba AMC LOEWS METREON 16 IMAX (for which the proper

Defendant entity is American Multi-Cinema, Inc.) ("Defendant AMC"); WESTFIELD CORPORATION (for which the proper Defendant entity is Westfield, LLC); and DOES 1-10, inclusive. Plaintiffs alleged that Defendants violated Title III of the ADA and sections 51, 52, 54, 54.1, 54.3 and 55 of the California Civil Code, and sections 19955 *et seq.*, of the California Health and Safety Code by failing to provide full and equal access to their facilities at the Metreon IMAX 16 Theater at 101 4th Street, San Francisco, California.

2. Defendants at all times denied any violation of law and nothing in this Consent Order constitutes an admission by AMC of any violation under Title III of the Americans with Disabilities Act, its enabling regulations, California state law, or of any of the allegations made by Plaintiffs in this lawsuit.

3. Defendant AMC and Plaintiffs (hereinafter referred to collectively as "the Signing Parties") hereby enter into this Consent Decree and Order for the purpose of resolving this lawsuit without the need for protracted litigation, and without the admission of any liability.

**JURISDICTION:**

4. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.* and supplemental jurisdiction for alleged violations of California Health & Safety Code §19955 *et seq.*, including §19959; Title 24 California Code of Regulations; and California Civil Code §§51; 52; 54; 54.1; §54.3; and 55.

**SETTLEMENT OF INJUNCTIVE RELIEF:**

5. This Order shall be a full, complete, and final disposition and settlement of Plaintiffs' claims for relief that have arisen out of the subject Complaint. The Signing Parties agree that there has been no admission or finding of liability or violation of the ADA and/or California civil rights laws and other applicable laws, codes, regulations, and ordinances, and this Consent Decree and Order should not be construed as such.

6. The Signing Parties agree and stipulate that the corrective work will be performed in compliance with the standards and specifications as set forth in the California Code of Regulations,

Title 24-2, the Americans with Disabilities Act Accessibility Guidelines, and other applicable laws, codes, regulations, and ordinances, unless other standards agreed to in this Consent Decree. If a conflict of law or regulation arises under this Section, the meet and confer procedure outlined below shall be followed.

    a)    <u>Remedial Measures</u>: The corrective work agreed upon by the Signing Parties is attached here to as **Attachment A**. Defendant AMC agree to undertake all of the remedial work set forth therein.

    b)    <u>Timing of Injunctive Relief</u>: Defendant AMC will submit plans for all corrective work to the appropriate governmental agencies within 30 days of entry of this Consent Decree and Order by the court, will commence work within 30 days of receiving approval from the appropriate agencies, and will complete all work within 30 days of commencement. For work not requiring building permits, the work will be completed within 30 days of entry of this Consent Decree and Order by the court. In the event that unforeseen difficulties prevent Defendant AMC from completing any of the agreed-upon injunctive relief, Defendant AMC or its counsel will notify Plaintiffs' counsel in writing within 15 days of discovering the delay. Defendant AMC or its counsel will notify Plaintiffs' counsel when the corrective work is completed, and in any case will provide a status report no later than 120 days from the entry of this Consent Decree.

    c)    <u>Notice and Opportunity to Cure</u>: If Plaintiffs or their counsel believe that this agreement has not been complied with, they will provide notice and an opportunity to cure to Defendant AMC as herein described. Plaintiffs' counsel will provide written notice of any alleged violation of the agreement to Defendant AMC's counsel. Within 20 days of receiving such notice, Defendant AMC or its counsel will either notify Plaintiffs' counsel that the alleged defect has been cured and allow Plaintiffs or their representatives an opportunity to verify that the defect has been corrected, or else will hold a "meet and confer" conference with Plaintiffs' counsel, either by telephone or in person. The Signing Parties will make a good faith effort to resolve any issue regarding compliance with this Consent Decree during the meet and confer. If the Signing Parties are unable to resolve the issue on their own, then Plaintiffs will file a motion with the Court to

Consent Decree and [Proposed] Order
C07-5368 MHP/JCS

3

enforce compliance with the Consent Decree. If the Signing Parties are able to resolve the issue without court intervention, Plaintiffs will not make any claim for attorney fees or for statutory damages (Plaintiffs do not, however, waive personal injury damages if injured). If Plaintiffs file a motion, they reserve the right to seek attorney fees in connection with the enforcement proceedings, if any.

d) <u>Notices</u>: All notices, correspondences and reports required by this Order shall be sent by overnight courier to the Signing Parties at the following addresses or to such other person as the Signing Parties may designate in writing in the future:

<u>For notices to the Plaintiffs</u>:

Paul L. Rein, Esq.
Law Offices Of Paul L. Rein
200 Lakeside Dr., Suite A
Oakland, CA 94612
(510) 832-5001

<u>For notices to American Multi-Cinema, Inc.</u>

Edwin F. Gladbach, Esq.
Vice President, Legal
AMC Entertainment Inc.
920 Main Street
Kansas City, MO 64105

and

M. Brett Burns
Hunton & Williams, LLP
575 Market Street, Suite 3700
San Francisco, CA 94105

e) <u>Delays or Modifications Caused by City, State or Local Authorities</u>: Defendant AMC will make reasonable good faith efforts to obtain permits and authorizations including, without limitation, building permits and certificates of occupancy that may be required under local law, ordinance, or other applicable law in order to accomplish the modifications required under this Order. If a city or other applicable state or local authority does not provide the permits or authorizations in a timely manner, and such delay impacts Defendant AMC's ability to make any of the modifications set forth in the Order within any of the time periods set forth herein, the applicable

time period(s) for Defendant AMC to make the modification(s) at issue shall be automatically extended by the period of the delay. Defendant AMC shall notify Plaintiffs' counsel of such delay and the reasons therefore. If a city or other applicable state or local authority refuses to provide permits or authorizations needed to accomplish any modification required under this Order, or conditions the issuance of any such permit or authorization on Defendant AMC's making modifications in addition to those required by the Order, Defendant AMC's obligation to make the modifications(s) will be suspended while Defendant AMC's counsel and Plaintiffs' counsel meet in a good faith effort to agree on a comparable substitute modification(s).

**DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES, AND COSTS:**

7. The Signing Parties have reached a separate settlement agreement regarding Plaintiffs' claims for damages. The Signing Parties agree that Plaintiffs' claims for attorney fees, litigation expenses, and costs will be submitted to the Court for resolution upon a mutually agreeable schedule.

**ENTIRE CONSENT ORDER:**

8. This Consent Decree and Order and **Attachment A** to this Consent Decree, which is incorporated herein by reference as if fully set forth in this document, constitutes the entire agreement between the Signing Parties on the matters of injunctive relief, and no other statement, promise, or agreement, either written or oral, made by any of the Signing Parties or agents of any of the Signing Parties, that is not contained in this written Consent Decree and Order, shall be enforceable regarding the matters described herein.

**CONSENT ORDER BINDING ON SIGNING PARTIES AND SUCCESSORS IN INTEREST:**

9. This Consent Decree and Order shall be binding on Plaintiffs, Defendant AMC, and any successors in interest. The Signing Parties have a duty to so notify all such successors in interest

of the existence and terms of this Consent Decree and Order during the period of the Court's jurisdiction of this Consent Decree and Order.

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542:**

10. Each of the Signing Parties to this Consent Decree understands and agrees that there is a risk and possibility that, subsequent to the execution of this Consent Decree, any or all of them will incur, suffer, or experience some further loss or damage with respect to the Lawsuit which are unknown or unanticipated at the time this Consent Decree is signed. Except for all obligations required in this Consent Decree, the Signing Parties intend that this Consent Decree apply to all such further loss with respect to the Lawsuit, except those caused by the Signing Parties subsequent to the execution of this Consent Decree. Therefore, except for all obligations required in this Consent Decree, this Consent Decree shall apply to and cover any and all claims, demands, actions and causes of action by the Signing Parties to this Consent Decree with respect to the Lawsuit, whether the same are known, unknown or hereafter discovered or ascertained, and the provisions of Section 1542 of the California Civil Code are hereby expressly waived. Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

11. Except for all obligations required in this Consent Decree and the obligations in the separate settlement agreement, and excluding Plaintiffs' claims for attorney fees, litigation expenses, and costs, as referenced in Section 7, above, each of the Signing Parties to this Consent Decree, on behalf of each, their respective agents, representatives, predecessors, successors, heirs, partners and assigns, releases and forever discharges each other Party and all officers, directors, shareholders, subsidiaries, joint venturers, stockholders, partners, parent companies, employees, agents, attorneys,

insurance carriers, heirs, predecessors, and representatives of each other Party, from all claims, demands, actions, and causes of action of whatever kind or nature, presently known or unknown, arising out of or in any way connected with the Lawsuit.

**TERM OF THE CONSENT DECREE AND ORDER:**

12. This Consent Decree and Order shall be in full force and effect for a period of six months after the injunctive relief contemplated by this Order is completed. The Court shall retain jurisdiction of this action to enforce provisions of this Order during the aforementioned term.

**SEVERABILITY:**

13. If any term of this Consent Decree and Order is determined by any court to be unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND SIGNING PARTIES:**

14. Signatories on the behalf of the Signing Parties represent that they are authorized to bind the Signing Parties to this Consent Decree and Order. This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

Dated: February 10, 2010

*Nicole Brown-Booker by Paul L Rein, per written authorization*
Plaintiff NICOLE BROWN-BOOKER

Dated: February 10, 2010

*Jana Overbo, per Paul L Rein, per written authorization*
Plaintiff JANA OVERBO

Dated: February 10, 2010

*[signature]* Vice President, Legal
Defendant AMERICAN MULTI-CINEMA, INC.

APPROVED AS TO FORM:

Dated: February 10, 2010

PAUL L. REIN
CELIA MCGUINNESS
LAW OFFICES OF PAUL L. REIN

JULIE A. OSTIL
LAW OFFICE OF JULIE A. OSTIL

*Paul L Rein*
Attorneys for Plaintiffs
NICOLE BROWN-BOOKER and JANA OVERBO

Dated: February 10, 2010

M. BRETT BURNS
HUNTON & WILLIAMS LLP

*M Brett Burns*
Attorney for Defendant
AMERICAN MULTI-CINEMA, INC.

## ORDER

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

Dated: 2/18/10

*[signature]*
MARILYN HALL PATEL
United States District Judge

# Attachment A to Consent Decree and Order

## Case No. C07-5368 MHP/JCS

Defendant AMC shall perform the following remedial work, according to the conditions specified in the Consent Decree and Order. For the avoidance of doubt, Defendant AMC shall not be required to make any modifications as to item 10, below, not identified in Plaintiffs' expert report.

1. **Queue-line on First Floor:** Defendant AMC will cause the Q-line stanchions to be placed not less than 36" apart and will ensure that the stanchions are maintained in an accessible position at all times.

2. **Customer Service/Ticket Window Counter on First Floor:** Defendant AMC will adopt a policy to ensure that the lowered counter is in use any time the theater is open, and will institute training procedures to ensure that its employees understand this policy.

3. **Concession Service Counter on First Floor:** Defendant AMC will adopt a policy to ensure that any and all concessions offered by the theater (including ice cream) are available to disabled patrons at the lowered portion of the counter, and will institute training procedures to ensure that its employees understand this policy.

4. **Popcorn Butter Dispenser on First Floor:** Defendant AMC will modify the dispenser so that the operable portion of the mechanism does not exceed 48" above the finished floor.

5. **Women's Restroom:** Defendant AMC will:

    (a) Provide accessible signage pursuant to ADAAG and Title 24;

    (b) Move trash receptables so that they do not obstruct any required path of travel or clear floor space, and maintain them in such condition;

    (c) Relocate the sanitary toilet seat cover dispenser in the accessible stalls to be mounted no higher than 40" above the finished floor and adjacent to a 30" x 48" clear space;

    (d) Relocate grab bars in accessible stalls as necessary so that they are no higher than 33" above the finished floor and project a minimum of 24" in front of the toilet;

    (e) Reconfigure the semi-ambulatory stall so that it is no less than 36" wide.

6. **Door pressure for theater entry doors and other interior doors**: Defendant AMC will adjust the door pressure for the theater doors so that it does not exceed 8 lbs. of pressure to open any unlatched door along an accessible route, and will maintain this pressure by checking and adjusting monthly.

7. **Door landing in Theater 15**: Defendant AMC will provide a compliant 48" landing at the door to Theater 15 (currently a theater seat encroaches).

8. **Door unobstructed surfaces**: Defendant AMC will remove doorstops and any other obstructions along the bottom 12" of the door leading to the wheelchair lift in Theater 13, and in the corridor doors in Theaters 14 and 15.

9. **Ramp slopes in Individual Theaters**: Defendant AMC will remedy the following ramp slopes and ensure that they are not more than 8.33%:

    (a)  Theater 4, ramp on left side

    (b)  Theater 7, ramp on right side

    (c)  Theater 12, entry aisle on left side

10. **Ramp handrails in individual theaters**: Defendant AMC will provide fully ADAAG and Title 24-compliant handrails, including compliant knuckle space and handrail extensions, in the following theaters: Theater 1, Theater 5, Theater 7, Theater 8, Theater 9, Theater 11, Theater 12, Theater 14, and Theater 15.

11. **Vertical rise at bottom of ramps**: Defendant AMC will remedy the ramps so that the vertical rise at the top and bottom of the ramps do not exceed ¼" on the left side in Theaters 1 and 2, and on both sides in Theater 7.

12. **Edge protection at ramps**: Defendant AMC will provide compliant edge treatment at both ramps in Theaters 5 and 6.

13. **Landing at Ramp**: Defendant will provide a compliant landing at the bottom of the ramp in Theater 12.

14. **Unassisted use of wheelchair lift/elevator access**: Defendant AMC will institute policies and procedures to allow disabled patrons unassisted use of the wheelchair lift/elevator,

-2-
ATTACHMENT A TO CONSENT DECREE AND ORDER

including providing a key card, code, or other method of operating any locked doors in the designated path of travel to accessible seating in any and all theaters, and will institute training procedures so that its employees understand these policies and procedures. As to the service elevator, Defendant AMC will institute policies and procedures to allow disabled patrons assisted use of the elevator as a temporary measure, with a permanent solution on mutually agreeable terms to be defined at a later date.

15. **Slip Resistance in Path of Travel to Theater 15**: Defendant AMC will provide a slip-resistant treatment on the ramp on the upper level of the path of travel from the elevator to Theater 15.

16. **Accessible seating in all theaters**: Defendant AMC will reconfigure accessible seating as necessary to ensure that no accessible seating or companion seating is provided on any surface with a slope exceeding 2% in any direction. Defendants will reconfigure accessible seating as necessary to ensure that all accessible seating spaces are a minimum of 84" long.

17. **Accessible Seating in IMAX Theater**: Defendant AMC will provide fully compliant accessible seating spaces and adjacent companion seating, for a total of 7 accessible seats and 7 companion seats.

18. **Accessible Seating at the Top of Theater 13**: Defendant AMC will ensure that the distance between the companion seating space and the edge of the top of the stairway is at least 33" wide.

19. **Accessible Seating in Theaters 1-4**: Defendant AMC will provide 1 accessible seating space and adjacent companion seat in row 2 and 4 accessible seating spaces and 3 adjacent companion seats in row 3, for a total of 5 accessible seats and 4 companion seats.

20. **Accessible Seating in Theater 5**: Defendant AMC will provide 1 accessible seating space and adjacent companion seat in row 2 and 4 accessible seating spaces in row 3 with adjacent companion seats at a ratio of one companion seat for each accessible seating space, for a total of 5 accessible seats and 5 companion seats.

21. **Accessible Seating in Theater 6**: Defendant AMC will provide accessible seating spaces in row 3, with adjacent companion seats at a ratio of one companion seat for each accessible seating space, for a total of 5 accessible seats and 5 companion seats.

22. **Accessible Seating in Theaters 7-11**: Defendant AMC will provide accessible seating spaces in row 3, with adjacent companion seats at a ratio of one companion seat for each accessible seating space, for a total of 5 accessible seats and 5 companion seats.

23. **Accessible Seating in Theater 12**: Defendant AMC will provide two accessible seating spaces in the back row, and five accessible seating spaces in the third row, with adjacent companion seats, for a total of 7 accessible seats and 7 companion seats.

24. **Accessible Seating in Theater 13**: Defendant AMC will provide three accessible seating spaces in the back of the theater, and three accessible seating spaces in the 8th row with adjacent companion seats, for a total of 6 accessible seats and 6 companion seats.

25. **Accessible Seating in Theaters 14 and 15**: Defendant AMC will provide one accessible seating space in the fourth row, and six accessible spaces in the back row, with adjacent companion seats, for a total of 7 accessible seats and 7 companion seats.

26. **Public Information Regarding Accessible Seating**: Defendants will institute policies and procedures to inform the public of accessible seating locations in each theater via written pamphlet and internet, and to inform the public of which movies are being shown in which theaters via telephone. Defendants will institute training to ensure that their employees understand these policies and procedures.